### J. W. PAXSON CO. v. BOARD OF CHOSEN FREEHOLDERS OF CUMBERLAND COUNTY.†

(Circuit Court of Appeals, Third Circuit. December 20, 1912.)

No. 1,671.

**1. COURTS (§ 356\*)—FEDERAL COURT—REVIEW—ACTION TRIED WITHOUT JURY —FINDING OF FACTS.**

Where an action at law in a federal court is tried without a jury by stipulation under Rev. St. § 649 (U. S. Comp. St. 1901, p. 525), which provides that the court's finding of facts shall have the same effect as the verdict of a jury, a general finding of facts, like a general verdict, is not reviewable by the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 937; Dec. Dig. § 356.\*]

**2. EVIDENCE (§ 83\*)—PRESUMPTIONS—PROCEEDINGS BY COUNTY OFFICERS.**

Where the authorities of a county built a bridge across a navigable stream under an act requiring a draw placed "in the most convenient place for the navigation of the river," the presumption is that it was so placed, and the burden of proof rests on one asserting otherwise.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 105; Dec. Dig. § 83.\*]

**3. TRIAL (§ 68\*)—TRIAL WITHOUT JURY—PROCEDURE—DISCRETION TO REOPEN CASE.**

On the trial of an action of tort without a jury, where the court was not satisfied with the evidence on the question of damages, it was within its discretion to reopen the case and hear further evidence after the argument.

[Ed. Note.—For other cases, see Trial, Cent. Dig, §§ 158–163; Dec. Dig. § 68.\*]

**4. DAMAGES (§ 6\*)—TORTS—SUFFICIENCY OF EVIDENCE.**

Where a bridge owned by a county was so injured by the wrongful act of defendant that a portion had to be rebuilt, the county is not to be denied recovery of damages in substantially the amount expended, because the rebuilt structure may be of greater value than the old and it is impossible to make a nice estimate of the difference in value.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 5; Dec. Dig. § 6.\*]

In Error to the District Court of the United States for the District of New Jersey; Joseph Cross, Judge.

Action at law by the Board of Chosen Freeholders of Cumberland County against the J. W. Paxson Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 196 Fed. 156.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied February 10, 1913.

Martin V. Bergen, Jr., and Howard M. Long, both of Philadelphia, Pa., for plaintiff in error.

Walter H. Bacon and Roscoe C. Ward, Co. Sol., both of Bridgeton, N. J., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge.   This was an action in tort, originally instituted in the New Jersey Supreme Court and afterwards removed by the defendant to the Circuit Court of the United States for the District of New Jersey, for the recovery of $20,000 damages, for the negligent destruction by defendant of a portion of plaintiff's drawbridge over the Maurice river, in Cumberland county, N. J., August 30, 1909. As the case was tried, upon stipulation by the attorneys for the respective parties, before the court without a jury, under the provisions of section 649 of the Revised Statutes (U. S. Comp. St. 1901, p. 525), the facts of the case and conclusions of law arrived at can best be understood by quoting the opinion of the court as a whole. It is as follows:

"Cross, District Judge.   The above-entitled action was tried before the court without a jury, a jury having been waived by written stipulation pursuant to the statute.   The action was brought by the plaintiff to recover damages for the destruction of a drawbridge belonging to it and spanning Maurice river, at Mauricetown, in the county of Cumberland and state of New Jersey, on the 30th of August, 1909, through the alleged negligence of the defendant's agents.   On that date a barge known as the 'Mildred McNally' was being towed on a hawser by a tugboat known as the 'Lizzie D,' which tugboat was owned and in charge of the servants of the defendant.   The barge was 187 feet long on the water line, and 23.9 feet beam, and was at the time loaded with about 700 tons of sand.   The drawbridge in question was originally built by the Maurice River Bridge Company, a private corporation thereunto authorized by an act of Legislature of this state (P. L. 1864, p. 583).   Pursuant to that act, said company built a bridge over the Maurice river at the point in question.   Subsequently in 1871, by an act of Legislature passed in that year (P. L. 1871, p. 303), said bridge company was authorized and empowered to convey the bridge to the board of chosen freeholders of the county of Cumberland, the plaintiff herein, and pursuant thereto, such a conveyance was subsequently made, since which time the title to said drawbridge has been vested in and the bridge maintained and operated by said board of chosen freeholders, and was so maintained and operated on August 30, 1909.   The draw of said bridge turned on a pivot, resting upon a pier constructed for that purpose.   When the draw was turned, two open ways for the passage of boats were provided through the bridge, one on either side of the center pier, each 58 feet in width.   They are known in the case as the eastern and western draws.   The accident happened while the tug and her tow on their way down the river were attempting to go through the eastern draw.   The tug at the time had the barge in tow on a hawser of from 35 to 40 fathoms in length. The tide was ebb and running at the rate of about 3 miles an hour, and the tug 'clear of the current' about 3 miles an hour.   The river above the bridge was about 250 feet in width.   The evidence on behalf of the plaintiff shows that the tug, before coming into the reach of water leading to the bridge, signaled the bridge tender to open the draw, which was promptly done; that the tug and its tow as they approached the bridge, and for several hundred feet above it, were too far to the westward to make the eastern draw; that in crossing over to make that draw, which, because of a cross-current, was the customary one for boats to make in coming down the river, the barge in tow sheered, by reason of the tide striking its port side nearly

201 F.—42

abreast, so that, while the tug was able to go through the draw, the barge
was carried down by the tide and struck the eastern wing or fender of the
bridge, passed through it and struck the eastern span of the bridge, which
was thereby thrown off and into the water and destroyed. The testimony,
showing that the barge and her tow were too far to the westward to make
the eastern draw, was given by four experienced witnesses, three of whom at
least, were disinterested; they all unite in saying that the tug and barge
were, as they approached the bridge, too far to the westward and farther than
was customary for boats coming down the river, and intending to pass
through the eastern draw. It is true that their testimony is denied by that
of the captain of the tug, but in view of the fact that the plaintiff's witnesses
are disinterested, and that their testimony affords the only possible way of
accounting for the collision, it must be, and is accepted as true. It is accord-
ingly concluded that the tug and barge being too far to the westward, as they
approached the bridge, were as their course was changed to make the east-
ward draw, brought nearly abreast of the tide, and the barge having no power
of its own, was thereby carried down to and against the eastern wing and
span of the bridge. The hawser was broken by the collision and the tug
passed through the draw safely. The defendant, under the circumstances,
as the owner and manager of the tug is clearly liable. It towed the barge
into a position where it became dangerous and from which it was unable to,
or did not, extricate it. The collision was the result of faulty towing for
which, under the evidence, the defendant is liable.

"Pursuant to the provisions of the acts of the New Jersey Legislature above
referred to, it became and was the duty of the plaintiff to erect and maintain
suitable and sufficient wings to said bridge, and as an incident thereto, to
exercise ordinary care to maintain them in reasonably good and proper con-
dition for the purpose for which they were built.

"The defendant insists that the plaintiff did not discharge its duty in this
behalf, and that accordingly it was guilty of negligence which contributed to
produce the injury which it received. In support of this contention, it has
introduced evidence to show that the piles and timbers constituting the
wing and fender of the eastern span of the bridge, were at the time of the
accident, rotten and wholly unfit for the purpose for which they were designed
and constructed. A careful examination of the testimony upon this point,
however, satisfactorily shows that only the sappy portion of the heads of the
piles were decayed, which condition will, according to the evidence, exist after
a year or two of service, where they are not located wholly under water. The
heart of the piles, however, was sound, and the braces and sheathing of the
fender had been renewed about three years before, so that the structure as
a whole was, when the accident occurred, in reasonably good repair and con-
dition. This is shown not only by direct evidence, but inferentially by
the fact that only a day or two before the accident in question, the same
fender had been run into by a vessel, but withstood the shock without appar-
ent injury. That the blow which the fender received from the scow when
the accident in question happened, was of great force and violence, must be
inferred from the fact that a stick of hard yellow pine of the best quality,
twelve inches square, which had been in use three years and was perfectly
sound, was broken directly in two. The severity of the blow must therefore
be accepted as a fact, notwithstanding evidence on the part of the defendant
that it was of so slight a character that the paint on the bow of the barge was
not even scratched. Such testimony under the circumstances is incredible
and must be disregarded.

"Upon the question of damages, it appears that the eastern span of the
bridge was, according to the evidence, totally destroyed and the fender nearly
so. The iron with which the framework of the span was constructed was
bent and twisted, and the entire structure thrown into the river, and undis-
puted evidence shows that it would have cost more to have raised, straight-
ened and reconstructed the old span from the wrecked material, which was
iron, or to have built one like it of the same but new material, than it did to
build the new one, which was of steel. There is also evidence which shows
that the new span of steel has neither the durability nor the strength of the

one of iron, now forming the western span of the bridge, which it is stipulated in the case, was built at the same time and was in material, workmanship and generally like the one destroyed. Consequently, it inferentially but conclusively appears that the new span is not so good or durable as the old one was at the time of its destruction, and since the old one could not have been repaired or reconstructed without greater expense than was involved in building the new one, it seems but right and proper to allow as damages the cost of the new span and fender, less certain deductions from the cost of the fender, to which reference will later be made.

"In addition to the cost of such construction, the plaintiff seeks to recover the amount of certain fees for two meetings of the members of the board of chosen freeholders, and for meetings of its committee which had in charge the superintendence of the construction of the new span and fender; also for the cost of advertising for contractors' bids and other incidental expenses. The items just referred to cannot, however, be allowed because they are not claimed in the declaration and because, moreover, they are not the direct natural and proximate result of the defendant's negligence.

"The plaintiff also seeks to recover as an element of damage, an item of several hundred dollars which it was compelled to allow the contractor who rebuilt the span and fender, for delay in the performance of his contract caused, as alleged, by the conduct of the defendant. In this connection, it appears that at or about the time the construction of the span was commenced, an officer of the defendant company, with others, complained to the War Department of the way in which the span was about to be reconstructed; that the department investigated the matter and after hearing the parties, permitted the span to be rebuilt on the old lines. The allowance claimed by the contractor for the resulting delay was more than double the amount which was finally allowed him by the plaintiff. The amount, however, is immaterial, since for the reasons above given for the disallowance of certain other items, no part of it can properly be allowed. Furthermore, it was the right, if not the duty, of the defendant, its officers, or indeed any one else, to make the complaint in order that the question of whether or not the bridge was being rebuilt at a proper place, and in a proper manner, might be investigated and determined by competent authority. That item is accordingly disallowed. The fender was practically, but not totally destroyed. The evidence shows that the new one cost in the neighborhood of $2,000 and that the depreciation in value of the old one was from $500 to $700. Allowing $600 as representing such depreciation, and $250 as the value of the undestroyed portions, a deduction of $850 will be made from the cost of the new one and the balance of $1,150 allowed as the fair and reasonable damage sustained by the plaintiff on account of the fender. The contract for rebuilding the span and fender was entire, and called for the payment to the contractor therefor, of the gross sum of $9,590, deducting therefrom $850 as above allowed on account of the fender, there remains a balance of $8,740, for which, with interest thereon from May 28, 1910, together with costs of suit, judgment for the plaintiff will be entered."

In accordance with this opinion, judgment was entered by the court against the defendant and in favor of the plaintiff, for $9,997.10.

After the filing of its opinion by the court below, bills of exception, presented by the defendant, were allowed and sealed by the learned trial judge. The exceptions were to alleged findings of fact, and in the assignments of error founded thereon, these findings are challenged as unsupported by the evidence, all of which is before us in the record brought up by the writ of error.

[1] It is objected by the defendant, at the threshold of the argument, that error is not assignable upon such exceptions. As the case was tried and determined under section 649, Revised Statutes, section 700 of the Revised Statutes (U. S. Comp. St. 1901, pp. 525, 570),

though referring to the review of such cases in the Supreme Court, is now applicable to the like review in Courts of Appeal. These sections are as follows:

"Sec. 649. Issues of fact in civil cases in any Circuit Court may be tried and determined by the court, without the intervention of a jury, whenever the parties, or their attorneys of record, file with the clerk a stipulation in writing waiving a jury. The finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury."

"Sec. 700. When an issue of fact in any civil cause in a Circuit Court is tried and determined by the court without the intervention of a jury, according to section six hundred and forty-nine, the rulings of the court in the progress of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions, may be reviewed by the Supreme Court upon a writ of error or upon appeal; and when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment."

We are of opinion that the finding of the court was general and not special, and therefore, like the verdict of a jury, is not now reviewable by this court. No request was made for special findings, and unless some other request, or motion equivalent to a motion for peremptory instructions, or judgment non obstante veredicto was made, with proper exception to the refusal thereof, the findings of fact cannot be the subject of assignments of error.

The finding of the court was equivalent to a general verdict, though accompanied by a reasoned opinion. Treating the opinion, however, as embodying special findings of fact, we have carefully examined all the testimony in this voluminous record, bearing upon such of them as are covered by the exceptions and assignments of error.

The thirty-eighth, thirty-ninth, and fortieth assignments of error refer to those so-called findings of fact, upon which the general finding of the negligence of defendant is based.

The thirty-seventh assignment of error alleges that the court erred in finding as a fact, that the evidence showed that the bridge in question was originally built pursuant to law by the Maurice River Bridge Company, and that said Bridge Company was subsequently authorized by an act of the Legislature to convey the bridge to the board of chosen freeholders of the county of Cumberland, the plaintiff herein.

The forty-first assignment, referring to the opinion, alleges error in the findings of fact upon which, and in the method by which, the court assessed the damages against the defendant.

It will, of course, answer no good purpose to discuss at length the evidence upon which these findings are based. It suffices to say, as to all except the last mentioned, in reference to damages, that the findings as made must stand, if there was any substantial evidence to sustain them. From our examination of the testimony, we have no difficulty in concluding that there was substantial evidence to support every one of the so-called findings objected to. It is, of course, not permissible that we should weigh the evidence, pro and con, as to these findings, and give our own judgment on the side on which we think the evidence preponderated.

[2] As counsel for appellant seems to be under the impression

that they had properly raised a question as to the finding of the court, in regard to contributory negligence, we will say that we agree with what the court below has said in regard to this question, and that the testimony satisfactorily shows that no negligence on the part of the plaintiff was a contributing cause of the injury to the bridge. On this point, the counsel for the appellant has insisted very strongly that, inasmuch as a bridge over a navigable stream is, prima facie, a public nuisance, it was incumbent upon the plaintiff in this case to affirmatively show that it was authorized by law and constructed strictly in accordance with the requirements thereof. Therefore, it is contended that, as the original act of 1864, authorizing the building of the bridge by the Bridge Company, imposed upon the company the duty of constructing "a convenient draw or swing thereon of at least 40 feet opening, to be placed in the most convenient place for the navigation of said river, with sufficient wings, extending not less than 50 feet from said bridge," it was incumbent on the plaintiff to affirmatively show that when the bridge was rebuilt in 1888 by the freeholders of the county, the draw was placed in the most convenient place for the navigation of said river. (It does not seem to be seriously denied that all the other simple requirements of the statute for the construction of the bridge had been more than faithfully met.) Upon this contention, we have to remark that it was sufficient for the plaintiff to show the legislative authority for the building of said bridge in the public laws of the state of New Jersey. As we have said, the few and simple requirements of the act, that the bridge should be built across the river "from the foot of High street at Mauricetown, and should be at least 16 feet in width, except the draw, which may be 12 feet, with good and sufficient side rails for the safety of the travelers," and that the draw or opening should be at least 40 feet, were abundantly proved to have been complied with by the opening testimony in the case. As to the placing of the draw "in the most convenient place for the navigation of the river," the presumption is in favor of the judgment of the public officers who located it, in that respect. This is not a requirement of the act that can be affirmatively shown, in the sense that the other physical requirements are required to be shown. It is a matter that rests in opinion, and the burden is upon the defendant to rebut the presumption that the officials properly exercised the judgment reposed in them by law.

The matter which seems to have given the court below most difficulty, was the question of damages. On this point, evidence was produced to show that the eastern span of the bridge, which was of iron, as well as the substructure, which was of timber, was entirely destroyed, or at least so injured as not to be capable of repair. It was therefore necessary that a new span and substructure should be built. As to this, no serious controversy is made. A contract was accordingly entered into with the Owego Bridge Company, by which a steel span of the dimensions and general character of the old iron span, was put in place, and certain parts of the substructure renewed;

also a new fender, to replace the old fender that had been damaged, though not destroyed, by the barge. It is not disputed that Owego Bridge Company was a competent construction company. The contract price for the whole work was $9,920. This included a new fender in the draw, constructed of piles, as the old one had been, which was injured by the collision of the barge, but there was no evidence to show the cost of this fender separately from that of the other work. There was expert testimony to show that the new fender probably cost in the neighborhood of $2,000. As the old one had not been entirely destroyed, the depreciation in the value of the old one was estimated, upon expert testimony, at $600, and $250 was in like manner estimated as the value of the undestroyed portions. A deduction of $850 was therefore made from the contract price of $9,920, leaving a balance of $8,740—the amount found by the learned judge of the court below as the damages, with interest thereon from May 28, 1910.

[3] A very strenuous objection was made in the court below, and has been renewed in this court, as to the propriety of this assessment of damages, and of the method by which it was made. It was there stoutly contended, as here, that the new steel span was necessarily much more valuable than the old iron span, which had been put in place when the bridge was reconstructed in 1888, and that therefore, as the plaintiff had the benefit of this greater value in the span, it was ground for abatement in the damages, to be measured by the difference in value of the old and new structures. The extreme position was even taken by the defendant, that if it were impossible to arrive at this difference in value by any satisfactory method, only nominal damages could be recovered. The court below seems to have been impressed at first with this argument, and before arriving at the conclusion, as above quoted, required new evidence to be produced on both sides, and fixed a day therefor. After due consideration for some days, the learned judge again notified the parties that he was still not satisfied on the question that had been raised, and appointed a day for another hearing, several weeks after which, the court delivered the so-called conclusions of law and findings of fact, in the form of an opinion, as hereinbefore set out.

It is contended by counsel for the plaintiff in error, that the court below abused its discretion in thus reopening the case on these different occasions, to permit plaintiff to supplement its proof of damage. We think, however, that there is nothing in the case upon which to rest this contention. If the court did not abuse its discretion in this respect, this court cannot review the exercise thereof.

We go further, however, and say that the court were fully justified in thus reopening the case. It was for the purpose of satisfying its own judgment and conscience as to the important question of damages, and there is no suggestion that injustice or injury was done the defendant by the exceeding care taken by the learned trial judge to arrive at a correct conclusion in this important matter.

[4] We have carefully reviewed the evidence upon which the

judge's finding as to damages was made. It was shown by expert testimony, and not seriously controverted, that the new steel structure was a less durable and less costly structure than the old iron one; that the exactly similar iron span on the western side of the draw, put in place in 1888, when the bridge was reconstructed, was still strong and in good condition. We have no difficulty, however, as to the method adopted for arriving at the damages. It was clearly shown by the evidence that the iron span, as well as the wooden substructure, was so far destroyed as to be incapable of repair, and the construction of a new span, with its appurtenances, was absolutely necessary, in order that this bridge should again be fitted for public use. There was a real difficulty in getting the actual cost of repairs to the fender, which was included in the lump sum to be paid for the whole work. It was a matter, however, of a few hundred dollars only. The injury done to the bridge made necessary a new span and a new fender. The learned trial judge made liberal allowances for the value of the old fender, or parts thereof, and confined the damages, as far as he could, to the approximate cost of the rebuilding of the span. The plaintiff was compelled, by the negligence of the defendant, to build a new structure, which, as a new structure, was possibly, though not certainly, more valuable than the old one. But the old structure sufficed for the purposes of the plaintiff, and the plaintiff was damaged by being compelled to procure a new structure in place of the old one. for the contract price of which it was obliged to pay. The sufferer by the negligence of the defendant cannot be compelled to perform the impossible task of re-creating the old span, without buying a new one, or make a nice computation of the difference in value between the old one and the new. The plaintiff did not need a new span. The old one was sufficient, and the county was damaged by being compelled to incur the cost of a new one.

In Jenkins v. Penna. R. R. Co., 67 N. J. Law, 331, 51 Atl. 704, 57 L. R. A. 309, the manner in which the Court of Errors and Appeals of New Jersey dealt with the assessment of damages, with reference to facts involving a different point of view but not a different principle, commends itself. The question in that case presented the difficulty of distinguishing between damages arising from the negligent operation of its locomotives by the defendant, so as to cause them to emit smoke denser and more offensive, and greater in volume than was reasonably required for the careful operation of its railroad, to the injury of plaintiff's property situate near the railroad, from damage which was caused by smoke necessarily emitted in the careful operation of the road. After a thorough discussion of the question, the court concludes:

"To say that the plaintiff must be denied a substantial recovery because of the impossibility of distinguishing between the consequences that were lawfully originated and those that were unlawfully imposed upon him, is to say that in such circumstances, the best approximation to justice obtainable in a court of law is to require the injured party to bear the entire burden of loss. From the standpoint of natural justice, it would be better to permit the wrongdoer to bear the whole."

The other assignments of error, referring to rejection or admission of testimony during the trial, are numerous, but none of them, in our opinion, discloses injurious error.

We think the judgment of the court below should be affirmed, and it is so ordered.