## Commonwealth v. Hygrade Products Co., Inc., et al.

*W. A. Ramey*, for plaintiff.
*Arnold & Chaplin*, for defendants.

SMITH, P. J., December 7, 1942. — This case was tried by the court by agreement of counsel without a jury, and it was further agreed by counsel that it be disposed of by the court without formal findings of fact and conclusions of law. It is therefore in the hands of the court to make its decisions upon the testimony taken.

There are three defendants, the Hygrade Products Co., Inc., C. R. Donathen, and Joseph C. Jones. The Hygrade Products Company is shown to be a corporation engaged in the bottled soft drink business. Donathen was shown to be an owner of a truck and generally engaged in the trucking business. Jones was the driver at the time of the accident in question. It appeared in evidence that the truck had been loaned to

the company by Donathen for its business purposes under a rather indefinite agreement. From the evidence, however, it appears that the control of the truck and driver during the period of employment was that of the company rather than of Donathen. There is no question that the truck was engaged upon the company's business, which was the delivery of its bottled goods, being at the time on a trip from the company's place of business in Allegheny County into Clearfield County. If there was negligence upon the part of defendants, therefore, it was that of the Hygrade Products Co., Inc., as the principal, and that of Jones as the employe.

The accident involved the collapse of a bridge at Irvona in Clearfield County. This bridge was formerly a county bridge but had been taken over and was maintained by the Department of Highways of the Commonwealth upon a State highway. It was conceded for the purposes of this case that the ownership of the bridge had, under the governing legislation, passed to the Commonwealth. There was dispute about exactly what occurred and whether there was negligence upon the part of defendants. Upon the part of the Commonwealth as plaintiff, proof was offered that defendants' truck approached the bridge from one end down a grade from the direction of Coalport, and at such a rapid rate of speed as to be out of control, that it sideswiped some posts on the approach to the bridge and collided with one of the end posts of the bridge structure itself, causing this to be sheared and the bridge to fall into the stream, the truck falling with and on top of part of the structure itself. A car approaching from the other side of the bridge also went down with it. Defendants' evidence, on the other hand, was to the effect that the truck actually entered the bridge under control and at a proper rate of speed, and without overloading or other negligence; that the bridge trembled and then went

down, carrying the truck with it as well as the other car which entered subsequently.

These two versions of the facts present a dispute which it is for the court to resolve. We deem it unnecessary to review the circumstances in more detail, as the parties have waived the submission of formal requests for findings, and have left it to the court to decide as would a jury. Our decision on this is in favor of the Commonwealth's version; in other words, that the collapse of the bridge occurred through the truck being driven so as to collide violently with the end post of the bridge. It would follow, of course, that defendants were guilty of negligence.

The only other question involved and upon which briefs were submitted is concerned with the measure of damages. It appears that this bridge had almost reached the end of its life, a fact which had been recognized by the Department of Highways, and by reason of which steps for replacement were in contemplation. Following the collapse the bridge was not reërected in the same location, but a new bridge was erected in a different location several hundred feet away. No attempt was made to repair the bridge or replace it either temporarily or permanently.

The Commonwealth does not, of course, attempt to base its damage claim in any way upon the cost of the new bridge. Its claim for damages consists of, first, the sum of $1,000, which was the contract price at which it employed a contractor to furnish, maintain during the period of erection of the new bridge, and thereafter remove a temporary bridge belonging to the contractor. The second element of the damages claimed by the Commonwealth consists of the sum of $500 which was paid to a contractor for the removal of the old bridge and salvaging its parts. In connection with this it was shown that the contract between the Department of Highways and the contractor called for the delivery and retention by the Commonwealth of the bridge irons,

49 I beams, valued in the testimony at $735, but the retention by the contractor of the remaining materials salvaged from the old bridge, which was fixed in the testimony as being worth $292.50. Defendants raise some question as to whether or not a proper measure of damages was presented by plaintiff and whether the several items of claim are presented consistently with any one theory as to damages; they particularly contend that, if the cost of restoration is to be the basis, defendants are entitled to credit for the value of the structure after the accident, which is $735 for the I beams and $292.50 for the other parts of the bridge, or a total of $1,027.50.

While the general rule as to permanent damage to real estate calls for showing the difference between the value before and after, that is not an inflexible rule; in fact the whole subject of the measure of damages has considerable flexibility according to circumstances. Where the damages are to a bridge or structure, rather than to realty as such, it is well settled to be " 'the cost of repairing the damages and thus restoring the property to its former condition, unless such cost would equal or exceed the value of the building, in which case the value of the building would be the measure of the plaintiff's damages'.": Capri v. Jafolla & Mark, Inc., 119 Pa. Superior Ct. 563; Durante et al. v. Alba, 266 Pa. 444. In the latter case cited, paragraphs 5 and 6 of the syllabus read as follows:

"5. While the measure of damages for a permanent injury to land is the difference between the market value thereof before and after the injury was inflicted, this rule has no application to an injury which affects only a structure on the land.

"6. The measure in such cases is the cost of repair, or the actual value of the building at the time of the injury, less anything salvaged from it, whichever is least in amount, together with damages for detention, if the facts justify them."

The case here is especially peculiar in that the bridge in question was practically worn out and yet apparently still capable of serving its purpose until the State should provide a new and adequate bridge. Under such circumstances it would seem both in accord with the established principle and with equity and justice that the damages should be measured by the cost of temporarily furnishing a substitute for the period pending erection of a bridge. We have the measure of this in the contract price at which the Commonwealth actually obtained the substitution of such a temporary structure, namely, $1,000. In our opinion, that is the measure and the full measure of the Commonwealth's damage in this case.

In our opinion the Commonwealth is not entitled to claim in addition the cost of removing and salvaging the old bridge. It would have had to do this in any event whenever the time for abandonment of the old bridge arrived. This cost the Commonwealth the sum of $500 in cash and $292.50 in salvaged materials which it surrendered to the contractor. There is no complaint or question as to the reasonableness of this expense, nor is it shown that it would have been materially different had the Commonwealth itself voluntarily abandoned the bridge a year or so later. No claim for loss of use of the old bridge for any time is made, and therefore this expense of the removal is merely an expense which the Commonwealth had to incur in any event.

Neither do we think defendant is entitled to claim credit for the value of the salvage of the old bridge. It may be conceded that if the Commonwealth had presented and proved its claim on the basis of property damage, i. e., the value of the bridge as a structure of which it was deprived, such credit for salvage would have to be allowed. But the claim here is proved and allowed on the basis of a temporary loss of use. That loss was remedied by the substitution of an entire

structure for such temporary use. There is no evidence either that the old bridge could have been temporarily replaced on its abutments, or that by tearing it apart and reassembling its salvaged materials into a temporary structure any less expense would have been required than under the method followed. The contractor, however, did not deliver to the Commonwealth the title either to the temporary bridge or its constituent parts. As defendants are not called upon to compensate for loss of property ownership, but only for loss of use, the basis of their claim for credit falls. The old bridge structure remained the property of the Commonwealth in its demolished condition, and to realize on its value the Commonwealth had to incur the expense of salvaging and removing it; neither item properly enters into the method of ascertaining the damage adopted in this case.

We find in 25 C. J. S. 610 the following statement: "Where a structure appropriate to a particular use and sufficient therefor has been destroyed, the measure of damages may be the cost of replacing it, without taking into consideration the difference in value between the old and a new structure of the kind involved." Also J. W. Paxson Co. v. Board of Chosen Freeholders of Cumberland County, 201 Fed. 656. The measure of damages here allowed seems to fall within the rule as stated in the quotation, if it be understood that a replacement may be a temporary as well as a permanent one.

### Order

And now, December 7, 1942, in accordance with opinion herewith, the court finds that plaintiff, the Commonwealth of Pennsylvania, has been injured by defendants, the Hygrade Products Co., Inc., and Joseph C. Jones, in the amount of $1,000; this order to be entered with the same effect as a verdict and subject to such motions as may be made by any of the parties

subsequent to verdict. If no such motion shall be made, then upon motion judgment shall be entered in favor of plaintiff accordingly.