# Church of God of Prophecy v. City of Allentown

*Stanley B. Gruber,* for plaintiff.
*Alan M. Black,* for defendant.
*Joseph A. Holko,* for additional defendant.

YOUNG, *J.,* June 19, 1991—

## ORDER

Now, June 19, 1991, upon consideration of written briefs and oral argument of counsel, and consistent with the accompanying footnote, it is ordered that defendant City of Allentown's motion for summary judgment is granted.*

* The standard of review used to test a motion for summary judgment is very clear.

"A motion for summary judgment may properly be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . ... Additionally, the record must be examined in the light most favorable to the non-moving party, accepting as true all well-pleaded facts in their [sic] pleadings and giving that party the benefit of all reasonable inferences drawn therefrom." *McDonald v. Marriott Corporation,* 388 Pa. Super. 121, 124-25, 564 A.2d 1296, 1297-98 (1989). (citations omitted)

The court must decide whether plaintiff's house of worship, which was destroyed by water damage, has a fair market value from which compensation can be determined or whether replacement cost is the only viable measure of damages. This issue arises directly from the case of *PennDOT v. Estate of Crea,* 92 Pa. Commw. 242, 483 A.2d 996 (1977). In that litigation a drunk driver crashed into a bridge owned by the Commonwealth of Pennsylvania, Department of Transportation. The bridge collapsed and PennDOT sued the driver's estate for damages. The Commonwealth Court held that because the structure was a bridge, and a bridge is not capable of being bought or sold in the normal open marketplace, it could have no fair market value from which to calculate a reasonable measure of damages. Accordingly, the estate of the deceased motor vehicle operator was required to reimburse PennDOT for the replacement cost of the bridge. The question we must answer to resolve the present motion is whether a church is or is not truly marketable.

In 1973, plaintiff bought the building for $7,500. (Deposition of Norman Scotton at 13.) The building had been used as a church in the past, but was "practically empty" when purchased. *Id.* at 17. The structure was restored and refurbished and served as the place of worship for plaintiff until a water main break caused irreparable damage to the foundation on February 17, 1988. The building had been designed as a church and was being used as a church when it was destroyed.

Plaintiff claims that the edifice was a single-use structure with no marketability, and that it is therefore entitled to the replacement value.

The court concedes that the building was intrinsically unique to plaintiff. It is the place where the membership worshipped, the place from which they were brought into the

faith, married, and from which they were buried. The destruction of the building was something more to them than money could replace. All real estate is, by virtue of its nature, unique. Most home owners develop a pride in their abode, and are intensely and legitimately upset when their residences are damaged, destroyed or taken away. However, just as the inside of the building was unsuitable for plaintiff's church when they purchased it, requiring work, so too, could the building have been sold for some secular or private purpose just prior to the damage. As Bishop Scotton made clear, other people did show interest in purchasing the building. (Scotton deposition at 51.)

The court also has of record the affidavit of Glenn Moyer, a real estate agent and appraiser. The affidavit, in paragraph 2(e), states that direct sales comparisons of five other churches were used to arrive at a fair market value for the building. This demonstrates rather clearly that churches are sometimes bought and sold. Therefore, the building here cannot be considered to be like a public bridge. Its loss can be measured by the normal fair market value method and that is the measure of damages here.