**Janella OLIVER–SMITH**

v.

**CITY OF PHILADELPHIA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 11, 2008.

Decided Dec. 19, 2008.

Alan C. Ostrow, Philadelphia, for appellant.

Adrian J. Moody, Philadelphia, for appellee.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) which denied the City's motion for post-trial relief, in which, the City sought a new trial from a jury verdict returned on September 7, 2007, awarding Janella Oliver–Smith (Appellee) $80,000.00 in damages for the negligent demolition of her property

by the City. We reverse and remand for a new trial with the proper charge.

On April 8, 2003, Appellee purchased property located at 700 South 52nd Street in the City of Philadelphia (Property) for $20,000.00. A building that was deemed uninhabitable by both the City and Appellee was situated on such Property.

After Appellee purchased the Property, she contacted the Philadelphia Neighborhood Housing Service (PNHS) to assist her in securing a loan to rehabilitate the Property. PNHS contacted Melvin Esh (Esh), a building inspector, to inspect the Property and provide an estimate for the amount of money needed to repair the building on the Property. Esh estimated the cost of renovation and repair to be $113,500.00. Another contractor, Martin Bean (Bean), inspected the building and estimated the cost of renovation and repair to be $122,590.00.

On December 22, 2003, PNHS agreed to lend Appellee $65,000.00 to renovate and repair the Property. PNHS also agreed to help Appellee secure additional financing to reach the estimate provided by Esh. Appellee successfully received a total mortgage commitment of $125,000.00 for the renovation and repair of the Property.

After Appellee received the mortgage commitments, but before any renovations were made, the City tore down the building on the Property. As the building had been destroyed, the lenders cancelled their loan commitments.[1] Thereafter, Appellee sued the City for negligence in tearing down the building.

A jury trial was held, at which testimony was taken as to the value of the Property. Prior to the demolition, the Property with the uninhabitable building was valued at

---

1. PNHS financing is only available for renovation and repair of existing structures on a property.

$20,000.00. The amount of the loans that were secured to renovate and repair the Property totaled $125,000.00. The value of the Property after the demolition was $35,000.00. The trial court read, in pertinent part, the following charge to the jury:

> Plaintiff is entitled to be compensated for the harm done to her property. If you find that the property was a total loss, damages are to be measured by either it's (sic) market value or it's (sic) special value to the plaintiff, whichever is greater. The plaintiff is entitled to be reimbursed for losses reasonably incurred because of the damage to the property.

Notes of Testimony (N.T.), September 7, 2007, Original Record (O.R.) at 45–46.[2] The City objected to that part of the trial court's charge which was based on Section 6.11 of the Pennsylvania Suggested Standard Civil Jury Instructions, 3rd Edition (Jury Instruction). N.T., September 7, 2007, at 11; Reproduced Record (R.R.), at 82a. The trial court overruled the City's objection. On September 7, 2007, the jury found the City negligent in tearing down the building and entered a verdict for the Appellee in the amount of $80,000.00.

The City filed a motion for post-trial relief seeking a new trial, citing as error that part of the charge relating to "special value." After oral argument, the trial court denied the motion, and, after entry of judgment, the City appealed to our court.[3]

The City contends that the trial court erred as a matter of law in charging the jury in a negligent demolition case that it could award as damages the "special value" of the property to the Appellee rather than the diminution in the fair market value.[4]

An erroneous jury instruction may provide the basis for a new trial if it is shown that the instruction was fundamentally in error and that it may have been responsible for the verdict. *Smith v. Brooks*, 394 Pa.Super. 327, 575 A.2d 926 (1990), *allocator denied*, 527 Pa. 625, 592 A.2d 45 (1991).

The City argues that the proper charge would have been the market value of the Property, not the special value to the owner, as the Property had market value as testified to by Appellee. In a negligent demolition claim, the proper charge to the jury would not have included "special value" of the property. The proper measure of damages in a case where the injury to the property was permanent is the market value of the property immediately before the injury. *Frederick v. City of Pittsburgh*, 132 Pa.Cmwlth. 302, 572 A.2d 850 (1990).

The City argues that the trial court erred in charging the jury using Jury Instruction Section 6.11 which provides in pertinent part as follows:

> PROPERTY DAMAGE
> The Plaintiff is entitled to be compensated for the harm done to [his][her] prop-

---

2. We note that we must reference at times the original record, as well as the reproduced record, as pages of testimony are missing from both. We have found that both the original and reproduced records have missing pages, are incomplete and out of order. We sympathize with the trial court and understand its frustration in dealing with such disorganization and carelessness on the part of the City.

3. Our review is limited to determining whether the trial court abused its discretion or committed an error of law. *Loos & Dilworth v. Quaker State Refining Corp.*, 347 Pa.Super. 477, 500 A.2d 1155 (1985).

4. We note that the City did object during the trial to the trial court's charge, thus this issue was preserved for appeal.

erty. If you find that the property was a total loss, damages are to be measured by either its market value or its special value to the plaintiff, whichever is greater. . . .

The subcommittee note to Section 6.11 provides as follows:

Damage to property is covered generally by the Restatement of Torts sections 927 and 928. Section 927 provides for damages to be measured by the "market value" or "damages based upon its special value to [plaintiff] if that is greater than its market value." Restatement of Torts § 927, comment c. (1934).[5]

Further, the City contends that the "special value" that the trial court permitted to be considered by the jury included the approved loan amounts that were cancelled upon the City's negligent destruction of the Property. Although the loans were cancelled, such does not preclude Appellee from obtaining other loans.

The case of *Pennsylvania Department of General Services v. United States Mineral Products Co.*, 587 Pa. 236, 898 A.2d 590 (2006), was a strict products liability action for property damage resulting from a fire in the Transportation and Safety (T & S) Building on the state's Capitol campus. After the fire, extensive evidence of polychlorinated biphenyl (PCB) was detected inside the building and although occupants returned, the Commonwealth ultimately demolished the building, replaced it with the Keystone Building and filed suit against the manufacturers of the PCBs, including the appellant Monsanto and others. Monsanto objected to the trial court's charge to the jury which was, in relevant part, as follows:

You have heard evidence of the costs incurred by the plaintiff to build the new

5. The Restatement 2nd of Torts (Restatement), Section 927 provides in pertinent part as follows:

(1) When one is entitled to a judgment for the ... destruction ... of any legally protected interest in land or other thing, he may recover either
 (a) The value of the subject matter or of his interest in it at the time and place of the ... destruction. . . .
Value is defined in Section c of the comments to Restatement Section 927 as follows:
 c. Value. As stated in § 911, "value" includes market value and value to the owner. A person tortiously deprived of property is entitled to damages based upon its special value to him if that is greater than its market value.
Restatement Section 911 provides in pertinent part as follows:
 (1) As used in this Chapter, value means exchange value or the value to the owner if this is greater than the exchange value.
 (2) The exchange value of property or services is the amount of money for which the subject matter could be exchanged or procured if there is a market continually resorted to by traders, or if no market exists,

the amount that could be obtained in the usual course of finding a purchaser or buyer of similar property or services. The rental value of property is the exchange value of the use of the property.
Comments (b) and (e) of Restatement Section 911 provide in pertinent part as follows:
 (b) Market value. If there is an established market, the value of property ordinarily is determined by the amount paid in actual transactions involving a similar subject matter if the transactions have occurred at or about the time fixed for determining value.
 * * *
 (e) Peculiar value to the owner. The phrase "value to the owner" denotes **the existence of factors apart from those entering into exchange value that cause the article to be more desirable to the owner than to others.**
 * * *
 Real property may also have a value to the owner greater than its exchange value. Thus a particular **location** may be valuable to an occupant because of a business reason, as when he has built up good will in a particular neighborhood. . . . (Emphasis added.)

Keystone Building as a replacement for the demolished Transportation & Safety [T & S] Building. If you find that the T & S Building was a total loss, damages are to be measured either by its market value or its special value to the plaintiff, whichever is greater. The T & S Building was operational, albeit it had inadequacies. Consequently, you may determine that it had a value to the plaintiff regardless of its market value. In order to recover replacement costs, plaintiff must prove, in addition to all of the things that I have already instructed you, on [sic] these additional elements[:]

\* \* \*

[F]irst that PCBs could not have been cleaned up to a level safe for occupancy and, second, that the T & S Building was unique and totally incapable of commercial appraisal.

*Id.* at 248, 898 A.2d at 597. Although the Supreme Court agreed that the jury could find the structure to be a special-purpose property in light of the unique attributes of the T & S Building, such as, its public purpose and location on the Capitol campus, it reversed, concluding that "by authorizing the award of damages for property loss based solely upon raw replacement costs, the trial court erroneously extended the range of permissible damages outside the realm of fair compensation." *Id.* at 252, 898 A.2d at 600. The Supreme Court found, among other things, a fundamental defect in the verdict which required a new trial on the measure of damages.

 "The fundamental purpose of damages for an injury to or destruction of property by the tortious conduct of another is to compensate the injured party for the actual loss suffered." *Department of Transportation v. Crea,* 92 Pa.Cmwlth.

242, 483 A.2d 996, 1001 (1977). Appellee presented evidence that she purchased the Property on April 8, 2003, for $20,000.00. The Property was later appraised, prior to demolition, at $20,000.00. Appellee did not present any evidence showing that she had spent any money repairing or rehabilitating the Property or that there were any unique characteristics of the Property that warranted a special value. The charge by the trial court of anything further than market value was, therefore, an erroneous extension of the range of permissible damages.

Appellee cannot receive as damages money that she never spent. Such unspent money is not actual damages, but a windfall. Section 911 provides for special value, but only for matters which can be accounted for. In this case, the loss of approved loans/mortgages which were never executed and to which no legal obligation ever attached does not amount to "special value." The trial court erred in directing the jury.

Accordingly, we must reverse the order of the trial court and remand for a new trial with the proper charge.

### *ORDER*

AND NOW, this 19th day of December, 2008 the Order of the Court of Common Pleas of Philadelphia County in the above captioned matter is reversed and the matter is remanded to the trial court for a new trial with the proper charge.