No. 83-96

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

LIMA SCHOOL DISTRICT NO. 12
and ELEMENTARY SCHOOL DISTRICT
OF BEAVERHEAD COUNTY, MONTANA,

        Plaintiff and Appellant,

  -vs-

KENNETH SIMONSEN AND ANN
SIMONSEN,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Fifth Judicial District,
                In and for the County of Beaverhead,
                The Honorable Frank E. Blair, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        W.G. Gilbert, III, Dillon, Montana

    For Respondents:

        Thomas A. Dooling, Dillon, Montana

    For Amicus Curiae:

        Richard P. Bartos, Office of Public Instruction,
        Helena, Montana

---

Submitted on Briefs:  March 1, 1984

Decided:  May 24, 1984

Filed:  MAY 24 1984

*Ethel M. Harrison*

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The Lima School District No. 12 filed suit against Kenneth and Ann Simonsen in 1979 to recover money paid to the Simonsens under a transportation contract. The Simonsens counterclaimed alleging damages resulting from prior acts of the School District and the filing of the suit. The Beaverhead County District Court denied the claim of the School District and awarded the defendants $5,000 on their counterclaim. The Lima School District appeals this judgment.

The defendants in this action own an isolated ranch in the Centennial Valley thirty-five miles east of Lima, Montana. This ranch is located in the Lima School District and Beaverhead County. The present controversy arose after the Simonsens applied for and received $814.50 from the Lima School District for transporting their two children during the 1976-1977 school year. At issue is whether the Simonsens' ranch in the Centennial Valley is their legal residence.

Ann Simonsen was raised on the Centennial property. She attended the nearby Doyle School which was closed by the Lima School District for lack of school-age children in 1965. The school has not been reopened since that date.

The Simonsens received their interest in the ranch from Ann Simonsen's mother in 1967. The Simonsens do not live on the property year round; snow closes the access roads in winter and the county makes no effort to keep the roads open due to the area's sparse population.

The condition of the ranch, though not truly at issue here, was described variously in the proceeding below. Even

2

if the roads were kept open in winter, the property does not provide what many would consider a suitable residence. The ranch is not serviced by electricity. The Simonsens, during their summer stays at the ranch have centered their living around a self-contained camp trailer. There is a cabin on the property, although the condition of this cabin was the subject of conflicting testimony at trial.

The Simonsens maintain the Centennial property is their home. Ann Simonsen testified that she has never left the ranch without the intention to return. Ken Simonsen testified that he has lived and worked in Butte in order to subsidize the ranch and has continued to work on the ranch whenever he was able to do so. The Simonsens have run cattle on the ranch in the summers although this was never a large operation.

In June 1976 Ann Simonsen applied to the Lima School District for funds to defray the cost of school transportation for her children. The Simonsens did not live on their Centennial property that winter and school year. Winter closures of roads effectively barred the family from living on their property and sending their children to the nearest open school of the Lima School District. During the school year in question, 1976-1977, and subsequent years, Ann Simonsen lived with her children in Sheridan, Montana, in Madison County. Sheridan is located thirty-seven road miles northeast of Dillon, the county seat of Beaverhead County. Therefore, a transportation contract was entered into in Beaverhead County, the professed county of residence for the family, and the children were sent to school in Sheridan within Madison County. It was Ann Simonsen's belief that money received from the Lima School District could be used to

3

defray the costs of boarding and sending her children to school outside the District.

After the 1976-1977 school year, the Lima School District paid Ann Simonsen $814.50 under the transportation contract executed the previous summer. The School District alleges that this money was paid under the mistaken belief that the Simonsens were legal residents of Beaverhead County.

Ann Simonsen applied for a second transportation contract preceding the school year of 1977-1978. The application for this contract was denied August 25, 1977, by the Transportation Committee of Beaverhead County on the grounds that Ann Simonsen was not a legal resident of the county.

Ann Simonsen appealed the denial of the 1977-1978 transportation contract application to the Beaverhead County Transportation Committee. This appeal was filed on June 22, 1978. The appeal was denied by the Beaverhead County Superintendent on June 28, 1978. This decision was subsequently appealed by Ann Simonsen on March 5, 1979, to the State Superintendent of Public Instruction.

While this case was being litigated through the administrative appeal process, a complaint was filed by the Lima School District and its attorney, W. G. Gilbert III, in Beaverhead County District Court. The School District alleged in its complaint that $814.50 in transportation money had been paid to the Simonsens in 1977 by mistake. It demanded judgment against the defendants for that amount plus costs.

This case was docketed by the Beaverhead County District Court as Cause No. 9285. The Simonsens answered the complaint and cross-complained alleging $10,000 in damages due to the School District's denial of the transportation

4

contract, failure to provide a school and filing of its complaint prior to exhaustion of the administrative appeal.

Trial was held without a jury May 20, 1980. Findings of fact and conclusions of law were entered July 29, 1980. District Judge Frank Blair found that the Simonsens were residents of Beaverhead County and they were entitled to a transportation contract for the school year 1976-1977. After finding for the defendants on the complaint, Judge Blair noted that the plaintiff School District failed to present a defense to the cross-complaint and entered judgment in favor of the Simonsens, the amount of damages to be determined at a later hearing. Such hearing was held July 6, 1982 and a damage award of $5,000 was made to the Simonsens in a final judgment entered December 28, 1982. This judgment is the subject of this appeal.

While Cause No. 9285 was being litigated, the administrative appeal of the denial of the 1977-1978 transportation contract progressed. On September 4, 1981, after Cause No. 9285 had been heard and findings entered, the State Superintendent of Public Instruction, Ed Argenbright, affirmed the Beaverhead County Transportation Committee's order denying the 1977-1978 transportation contract. The Transportation Committee had found previously that Ann Simonsen was not a resident of Beaverhead County. The State Superintendent of Public Instruction in his decision demonstrates the mistaken belief that the Simonsens were the plaintiffs in the prior civil action, Cause No. 9285. He notes that they had failed to exhaust their administrative remedies prior to bringing that action. The Simonsens were, of course, defendants in Cause 9285. Under his mistaken belief the State Superintendent of Public Instruction ruled

5

the prior Beaverhead County District Court order of Judge Blair was not controlling in his review of the matter.

A petition for review of the final decision of Ed Argenbright was then filed by Ann Simonsen in the Beaverhead County District Court. This second case dealing with the issue of the Simonsens' residency was docketed as Cause No. 9714. The case was decided April 13, 1983 and Judge Mark Sullivan affirmed the September 4, 1981 decision of the Superintendent of Public Instruction. An attempt to appeal the judgment of Cause No. 9714 was untimely and this Court denied the Simonsens' motion to file a notice of appeal nunc pro tunc on October 24, 1983.

Summarizing the above discussion, we are presented with two lawsuits. Both suits hinged on the question of the Simonsens' legal residency. The two results are diametrically opposed. However, the first suit, docketed Cause No. 9285, addresses residency during the 1976-1977 school year for which the transportation contract was paid. The counter-claim of Cause No. 9285 and the second suit, Cause No. 9714, addresses the school year of 1977-1978 for which a future contract was denied. Cause No. 9285 is currently before this Court while Cause No. 9714 is not.

I

The first issue to be decided is whether the Beaverhead County District Court erred when it found the Simonsens were residents of the county. We preface our discussion of the residency question by noting that technically we are only reviewing the trial court's residency finding as it relates to the 1976-1977 school year transportation contract. The decision of the administrative agency and its subsequent

6

affirmance in Beaverhead County District Court Cause No. 9714 concerned residency for purposes of the 1977-1978 school year transporation contract application. Since the decision in Cause No. 9714 was later in time than the decision of Judge Blair which we are reviewing, questions of res judicata are not presented

The parties basically agree on the appropriate law that should be applied to the question of residency. Section 20-10-121(1), MCA, provides that trustees of a school district have a duty to provide transportation for all eligible transportees whenever transporation is provided for any transportee. The Lima School District has such a duty. This obligation by the terms of subparagraph two of section 20-10-121, MCA, can be fulfilled by the District entering a contract and reimbursing the parent for individually transporting the pupil. Such is the statutory basis of the transportation contract at issue here. The method by which the parent is reimbursed by contract may include (1) paying the parent or guardian for individually transporting the pupil; (2) paying room and board reimbursements; (3) providing supervised correspondence study; or (4) providing supervised home study. Section 20-20-121(3)(b), MCA. The statute further recognizes a practice whereby a district may furnish transportation to an eligible transportee who has been granted permission to attend school outside of the district. Section 20-10-121(1), MCA.

The statute that authorizes the execution of transportation contracts arguably infers that school districts must give prior permission to those pupils who want to attend school outside of their home district. The statute reads: "The trustees of any district may furnish

7

transportation to an eligible transportee who attends a school of the district or has been granted permission to attend a school outside of the district." Section 20-10-121(1), MCA. Neither party has raised the question of the applicability of this aspect of the statute to the facts of this case. Therefore, the issue will not be reached by this Court.

It is clear that the statutory scheme provides a flexible procedure whereby a parent of an eligible transportee can be reimbursed for the incidental costs of transporting and educating children. The statutory scheme has wide application to the large number of families who live in remote areas of our state. The threshold qualification is simply that the child be an eligible transportee.

Section 20-10-101(2), MCA, defines eligible transportee as a pupil who resides with a parent or guardian who "maintains a legal residence within the boundaries of the district furnishing the transportation regardless of where the eligible transportee actually lives when attending school." Initially, then, it can be stated that if Ann Simonsen maintained a residence during the 1976-1977 school year within the Lima School District, then her children were eligible transportees and the transportation contract was properly granted and paid.

In determining residence within Montana certain statutory rules are set forth in section 1-1-215, MCA. The applicability of this particular statute to the question of residency for the school transportation contracts is buttressed by the mandate of another statute. Section 20-10-105, MCA, states that when the residence of an eligible

8

transportee is a matter of controversy in an issue before the Board of Trustees, the County Transportation Committee, or the Superintendent of Public Instruction, residence shall be determined on the basis of section 1-1-215, MCA.

Section 1-1-215, MCA, provides that certain rules are to observed in determining the place of residence. In relevant part the rules state that there can be only one residence and "[i]t is the place where one remains when not called elsewhere for labor or other special or temporary purpose and to which he returns in seasons of repose."

Subsequent case law has held that these rules are only guidelines for interpretation and not a definition. Every case must stand upon its own facts and each decision will ". . . be the result of a more or less arbitrary application of the rules of law to the facts presented." McCarthy v. Montana Power Company (1963), 143 Mont. 134, 140, 387 P.2d 438, 442, quoting from Carwile v. Jones (1909), 38 Mont. 590, 602, 101 P. 153, 158. See also Kunesh v. City of Great Falls (1957), 132 Mont. 285, 317 P.2d 297.

Our decision today can rise above a mere "arbitrary application" of the law to the facts. The circumstances presented by the Simonsens' use of their Centennial ranch seem well within the scope of the statutory guidelines. We are presented with a situation where the Simonsens would remain on their ranch but for the pressing needs of earning an income and educating their children. Winter road closures and distance from a job market effectively bar the family from living year round on the ranch. This is precisely the type of situation the legislature must have had in mind when it enacted the guidelines of residency whereby a residence may be a place that one leaves for labor or other special or

9

temporary purpose. Educating one's children is certainly a special and temporary purpose within the meaning of the statute.

The Superintendent of Public Instruction in his decision and order dated September 4, 1981, found the Simonsens did not return to their ranch in seasons of repose. He found the Simonsens lived in and returned to Sheridan, Montana. The Superintendent did not specify what summers he was referring to in his decision. Nothing in the record before us would indicate that the Simonsens did not spend at least part of the summer of 1976 on their property. The season of repose for a rural family faced with the demands of earning an income and educating their children may be short indeed.

The School District argued that the Simonsens were not registered voters of Beaverhead County. However, the Simonsens were not registered voters of Madison County either. The mere fact that a husband and wife choose not to vote does not preclude them from obtaining legal residency and receiving its ancillary benefits.

Similarly, the School District emphasized the Simonsens paid no utility bills within Beaverhead County. Testimony was introduced about the "uninhabitable" nature of the ranch and its dwelling structures.

Such considerations that focus on the particular lifestyle a couple has adopted have little relevancy to the question of their legal residence. If this were not the case, a family could be denied certain privileges of residency, such as a school transportation contract, simply because they decided to live without or could not afford certain comforts.

The Simonsens' unqualified intent is to maintain their Centennial Valley ranch as their residence. No other home has been claimed as their residence. We recognize that intentions and declarations alone do not control the determination of residency. Veseth v. Veseth (1966), 147 Mont. 169, 410 P.2d 930. However, here there is more than mere intent. The Simonsen ranch has been owned and operated continuously by Ann Simonsen, and her family before her, for over thirty years. The Simonsens pay real estate taxes to Beaverhead County and a self-contained camp trailer licensed in the county has been maintained on the property.

A determination of residency in a situation like the present one cannot be made by mere application of mechanical rules. In accordance with this Court's decisions in McCarthy and Kunesh, each case must stand on its own facts. Findings of fact were entered by Judge Blair that support his conclusion that the Simonsens are residents of Beaverhead County. In reviewing findings of fact in a civil action tried without a jury, this Court may not substitute its judgment in place of the trier of facts. Our function is confined to determining whether there is substantial credible evidence to support the court's findings. We view the evidence "in a light most favorable to the prevailing party, recognizing that substantial evidence may be weak or conflicting with other evidence yet still support the findings." Lacey v. Herndon (Mont. 1983), 668 P.2d 251, 255, 40 St.Rep. 1375, 1380.

In light of the purpose for which the Simonsens left their Centennial property, their continuous intention to maintain the ranch as their residence and the payment of Beaverhead County property taxes, we hold there was substan-

11

tial evidence from which the District Court could conclude the Simonsens were residents of Beaverhead County.

Finding the Simonsens residents of Beaverhead County, it follows that the children were eligible transportees and the transportation contract for 1976-1977 was properly granted and paid.

II

The District Court awarded the Simonsens five thousand dollars for emotional damages on their counterclaim. The counterclaim alleged wrongful denial of the 1977-1979 school transportation contracts, failure to provide a school or passable roads, abuse of process, and failure to allow them to exhaust their administrative remedies. These allegations were denied by the School District in their responsive pleading. At trial however, the plaintiff School District chose not to present a defense to the Simonsens' counterclaim. The amount of damages is not an issue, only the School District's liability therefor.

Where a defendant counterclaims for damages due to the wrongful acts of the plaintiff, the defendant has the burden of proving the counterclaim. J.I. Case Threshing Mach. Co. v. Hamilton (1918), 55 Mont. 276, 176 P. 152; Murphy v. Cooper (1910), 41 Mont. 72, 108 P. 576. Once the defendant bearing the burden of proof has made a prima facie showing, the burden of going forward with the evidence shifts to the opposing party. See Duke City Lumber Co. v. New Mexico Environmental Imp. Bd. (1980), 95 N.M. 401, 622 P.2d 709.

We have reviewed the pleadings, answers to requests for admissions, interrogatories and trial transcript and find the

12

Simonsens satisfied their burden of proof. Sufficient evidence was before the trial judge for him to conclude that the School District wrongfully denied the Simonsens' transportation contract application for 1977-1978. We uphold the damage award on this basis. We find the School District and county have no statutory duty to provide either a school or passable roads for one family residing in an isolated valley. Nor do we find that the evidence submitted supports a cause of action for abuse of process. See Brault v. Smith (Mont. 1984), _____ P.2d ____, 41 St.Rep. 527.

The School District argues before this Court that the counterclaim is barred by the doctrine of sovereign immunity. This issue was not raised in the pleadings or otherwise at trial. It need not be considered by the Supreme Court. Huggans v. Weer (Mont. 1980), 615 P.2d 922, 925, 37 St.Rep. 1512, 1515. The School District itself initiated this lawsuit. It would be especially inequitable to allow the state to bring an action for payment by mistake and vest them with immunity from suit in related matters. The better rule is to recognize that whenever the state brings an equitable action it waives any applicable sovereignty and opens the door to a defense or counterclaim germane to the matter in controversy. See People v. Barenfeld (1962), 203 Cal.App.2d 166, 21 Cal.Rptr. 501.

Unlawful acts that result in detriment to a party provide a right to recovery of money damages in our state. §27-1-202, MCA. Denial of transportation money to an eligible transportee of a school district is such an unlawful act. There is no doubt that the Simonsens suffered detriment as a result of this denial. Not only did they suffer the pecuniary loss of the withheld transportation monies, but

13

they expended considerable time and emotional energy in defending against the School District's suit to recover the monies already paid.

We note that this lawsuit was filed despite the county attorney's knowledge of the pending administrative appeal concerning the issue of the Simonsens' residency. In the words of amicus State Superintendent of Public Instruction, the School District "jumped the gun" and filed a complaint before the administrative appeal process was complete. Neither the ends of justice nor the peace of mind of the Simonsens were served by such action.

For the wrongful denial of the transportation contract application and the cavalier treatment of the Simonsens by the School District, the trial court properly found damages in the amount of $5,000 plus costs.

The judgment of the district court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

14