No. 90-228

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA, BOARD OF DENTISTRY,

        Plaintiff, Respondent
        and Cross-Appellant,

    vs.

R. BRENT KANDARIAN,

        Defendant and Appellant.

**FILED**

JUN - 4 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead,
                The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                James C. Bartlett, Hash, O'Brien & Bartlett,
                Kalispell, Montana

        For Respondent:

                I. James Heckathorn, Murphy, Robinson,
                Heckathorn & Phillips, Kalispell, Montana
                John H. Maynard, Department of Administration,
                Helena, Montana

Submitted: March 7, 1991

Decided:    June 4, 1991

Filed:

Clerk

Justice William E. Hunt, Sr. delivered the opinion of the Court.

The Eleventh Judicial District Court, Flathead County, granted the State of Montana, Board of Dentistry's, motion for summary judgment on the issue of immunity, and denied its motion to vacate a previous order granting summary judgment against it on the issue of injunctive relief. Both parties appeal.

We reverse on the issue of immunity and affirm on the issue of injunctive relief.

We will address two issues on appeal:

1. Is the State of Montana, Board of Dentistry, immune from suit because it is a quasi-judicial body?

2. Did the District Court err in granting summary judgment to the defendant Kandarian on the issue of injunctive relief?

TMJ, or temporomandibular joint dysfunction, is a medical/ dental problem. R. Brent Kandarian, a denturist and head of the State Board of Denturitry, advertised in a local paper that he would perform "TMJ evaluations." On August 26, 1986, a dentist wrote to the Board of Dentistry (Board) requesting an investigation into the alleged illegal practice of dentistry by Kandarian. He stated in his letter that evaluating TMJ was the practice of dentistry, and that he had personal knowledge of an offer by Kandarian to treat a patient with TMJ disorder via construction of a partial denture.

2

The Board wrote to Kandarian on September 22, 1986, informing him of the complaint. On the same day, the Board of Denturitry was informed of the complaint against Kandarian. Kandarian responded that the Board had no power to regulate his denturitry practice.

The Board met on November 12, 1986, and without investigation, decided to ask Flathead County to file criminal charges against Kandarian. While Flathead County was deciding that issue, the Board's counsel released the contents of the complaint against Kandarian to the press. Flathead County refused to prosecute, and on February 2, 1987, the Board filed for an injunction against Kandarian.

The Board identified James Stobie, D.D.S., as the expert witness who would testify as to whether TMJ evaluations were within the practice of denturitry. His deposition stated that as long as a denturist is practicing denturitry, it would be misfeasance or malfeasance not to do a TMJ evaluation while fitting for "partials" or "fulls."

Kandarian counterclaimed and moved for summary judgment. The Board asked for "follow up discovery" and represented that it had witnesses who would be contacted and who would produce, by way of affidavit, evidence that Kandarian had done nondenture work on them.

On January 8, 1988, the court dismissed the complaint against Kandarian because the Board had failed to produce affidavits

showing that Kandarian had performed work on the natural teeth of two individuals previously named by the Board.

On February 25, 1988, the Board filed an amended response to Kandarian's counterclaim, claiming immunity for damages on the basis of its quasi-judicial status. In a January 1989 order denying immunity for the Board, the court found that lack of substantial investigation into the allegations against Kandarian raised questions of material fact as to whether the Board was performing its official duties. On March 13, 1989, Kandarian filed an amended answer and counterclaim, alleging breach of right of privacy, wrongful injunction, intentional interference with business and patients, slander and libel, wrongful civil litigation, abuse of process, outrage and intentional infliction of emotional distress, and negligence.

On February 8, 1990, the court issued a two-part order: first, the order denied the Board's motion to vacate the previous order granting summary judgment to Kandarian. Second, it vacated the January 1989 order and found immunity for the Board on the grounds that in the absence of rules for investigations, the statute provided that the Board could seek injunction under § 37-4-328(3), MCA. The court denied Kandarian's motion for attorney fees on March 15, 1990.

Judgment was filed on March 15, 1990, and Kandarian and the Board appealed.

4

Is the Board immune from suit because it is a quasi-judicial body?

The District Court's finding that the Board is immune from suit on the basis of quasi-judicial immunity is erroneous. We extended quasi-judicial immunity to administrative boards in Koppen v. Board of Medical Examiners, 233 Mont. 214, 759 P.2d 173 (1988). In that case, we stated that the discretion vested in the Board of Medical Examiners to determine whether or not to adjudicate an alleged violation by a licensee rendered it a quasi-judicial body. We referred to the notice and hearing requirements of the Montana Administrative Procedures Act (MAPA), and the fact that the decision is subject to judicial review, to support our holding that the Board of Medical Examiners is quasi-judicial and absolutely immune in the exercise of that authority. Koppen, 233 Mont. at 219, 759 P.2d at 176. In Koppen we cite Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978):

> We think that adjudication within a federal adminis-
> trative agency shares enough of the characteristics of
> the judicial process that those who participate in such
> adjudication should also be immune from suits for
> damages.

In this case, the Board was proceeding against a nonlicensee under § 37-4-328(3), MCA. That section does not require an administrative hearing before the Board under MAPA, but allows the attorney general, county attorney, or board to seek injunctive relief.

5

When the Board sought an injunction in the District Court, it put itself in the role of litigant or advocate, not adjudicator. Once it invoked the jurisdiction of the court under § 37-4-328, MCA, it acted as a litigant and was not immune from suit.

The Board also claims immunity similar to that enjoyed by prosecutors. While it is true that Koppen, citing Butz, states that "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts," it does not say that all board actions are immune. Koppen, 233 Mont. at 219, 759 P.2d at 176. In State ex. rel. Dept. of Justice v. District Court, 172 Mont. 88, 92, 560 P.2d 1328, 1330, we affirmed prosecutorial immunity for the State of Montana and the Department of Justice, noting that:

> When a prosecutor acts within the scope of his duties by filing and maintaining criminal charges he is absolutely immune from civil liability, regardless of negligence, or lack of probable cause.

In Dept. of Justice, we explain that concern over harassment by unfounded litigation could cause a prosecutor to shade decisions and affect the independence of judgment necessary to the administration of the criminal justice system.

The prosecutor's independence is checked by procedural safeguards inherent in the system, such as probable cause investigation, swearing under oath, etc. However, here we are not presented with a similar situation. The Board proceeded against Kandarian without any investigation of the allegations against him. It did

not interview Kandarian himself. It released sensitive material to the press about a possible criminal action without notice to Kandarian. The Board was not bound by and did not adhere to a process that provided any safeguards for Kandarian. It therefore does not enjoy the immunity afforded the prosecutor.

We reached the issue of state liability in Lima School District No. 12 v. Simonsen, 210 Mont. 100, 683 P.2d 471 (1984). In Lima, the school district claimed sovereign immunity on a counterclaim for damages arising from a suit it instigated. We denied immunity, stating:

> The School District itself initiated this lawsuit. It would be especially inequitable to allow the state to bring an action for payment by mistake and vest them with immunity from suit in related matters. The better rule is to recognize that whenever the state brings an equitable action it waives any applicable sovereignty and opens the door to a defense or counterclaim germane to the matter in controversy.

Lima, 210 Mont. at 772, 683 P.2d at 477 (emphasis added). Here the action for injunction was an equitable action, and we adhere to the "better rule" that the state does not enjoy immunity for its actions when it seeks injunctive relief in district court.

Did the District Court err in granting summary judgment to the defendant Kandarian on the issue of injunctive relief?

The District Court granted summary judgment to Kandarian when the Board sought to enjoin his practice. The only fact before the District Court was the expert's testimony that TMJ evaluations were indeed a part of the practice of denturitry. We thus find no abuse

of discretion by the District Court in the grant of summary judgment in favor of Kandarian.

Reversed in part and affirmed in part.

_William E. Hunter_
Justice

We Concur:

_____
Chief Justice

_John Conway Harrison_

_____

_____
Justices

Justice Terry N. Trieweiler concurring in part and dissenting in part:

I concur in part, and dissent in part, from the opinion of the majority.

I concur with that part of the majority's opinion which holds that the Board of Dentistry did not have immunity from suit under the circumstances in this case. I also concur with that part of the majority's opinion which affirmed the District Court's award of summary judgment on the issue of injunctive relief.

However, I dissent from the majority's failure to award attorney fees to Kandarian pursuant to Rule 11, M.R.Civ.P. That rule was designed to discourage the filing of claims which have no merit and to compensate people like Kandarian who have to expend substantial sums to defend against nonmeritorious claims. The key to invocation of the rule is whether an adequate investigation has been done by the complaining party before putting his opponent to the expense of litigation. The rule provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other papers; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> . . . .
>
> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon

9

its own initiative, <u>shall</u> impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

(Emphasis added.)

In this case, the Board of Dentistry made no reasonable inquiry prior to filing its claim for injunctive relief and naming Kandarian as a defendant. A member of the Association had sent it a copy of an ad, indicating that Brent Kandarian, a denturist, was available for "TMJ evaluations."

However, none of Kandarian's patients were interviewed; no investigation was done; and no experts were consulted prior to the filing of suit.

After suit was filed, the Board finally retained James L. Stobie, D.D.S. He was identified in court documents as the Board's expert for the purpose of establishing that it was a violation of the Dental Practice Act for a denturist to perform TMJ evaluations. When he was deposed, however, his testimony was to the contrary.

Dr. Stobie testified that he was the only prosthodontist in Montana. A prosthodontist has three years of specialized training after dental school. That training is related to the treatment of patients who have prosthetic devices. He testified that in the course of fitting a patient for dentures it is not only permissible, but mandatory for a denturist to perform a TMJ

10

evaluation and that, in fact, Kandarian would have been negligent if he had failed to do so.

Subsequent to Dr. Stobie's testimony, the defendant moved for summary judgment. At the time of that hearing, the Board's attorney offered to provide the testimony of two witnesses who would say that Kandarian had worked on their teeth, even though it was not for the purpose of fitting dentures. The Board was given ten days to provide such information, but failed to do so. In fact, one of the witnesses was subsequently offered as a witness by Kandarian and testified contrary to the representations of the Board's attorney.

After all of these court proceedings, and expense to the defendant, summary judgment was entered for the defendant dismissing the Board's complaint for injunctive relief.

Under these circumstances no "reasonable inquiry" was conducted prior to the commencement of this lawsuit, and the defendant is entitled to an award of reasonable attorney fees and costs to compensate him for having to unnecessarily participate in and defend against this action.

_____
Justice

11

Justice Fred J. Weber dissents as follows:

The key facts upon which the majority concluded that the Board of Dentistry, does not enjoy quasi-judicial immunity as described in Koppen v. Board of Medical Examiners (1988), 233 Mont. 214, 759 P.2d 173, are stated as follows:

> The prosecutor's independence is checked by procedural safeguards inherent in the system, such as probable cause investigation, swearing under oath, etc. However, here we are not presented with a similar situation. The Board proceeded against Kandarian without any investigation of the allegations against him. It did not interview Kandarian himself. It released sensitive material to the press about a possible criminal action without notice to Kandarian. The Board was not bound by and did not adhere to a process that provided any safeguards for Kandarian. It therefore does not enjoy the immunity afforded the prosecutor.

The essence of the foregoing holding appears to be that because the Board did not adhere to a process which provided safeguards for Kandarian, it had forfeited any immunity afforded a prosecutor, which apparently would also include the quasi-judicial immunity described in Koppen.

We do not have a controversy here which required a Board hearing in order to determine the contentions of the parties. Here a Kalispell dentist forwarded his letter to the Board of Dentistry complaining that Mr. Kandarian was engaged in the illegal practice of dentistry as appeared from the enclosed copy of an ad which showed Mr. Kandarian was advertising for dentures, partials, realigns, fast repairs, and "TMJ evaluations." That Kalispell dentist stated he had personal knowledge of Mr. Kandarian's offer to treat patients for TMJ disorders. By letter dated September 22, 1986, the Board of Dentistry furnished Mr. Kandarian a copy of the

12

complaint as filed. The Board requested a response and asked that if facts had been misstated Mr. Kandarian should so state and refer to documents or witnesses. By letter dated October 31, 1986, the attorney for the Board of Dentistry again wrote to Mr. Kandarian with regard to the same complaint. In that letter the attorney pointed out that the complaint alleged unlicensed practice of dentistry and referred to the civil and criminal sanctions. It again asked Mr. Kandarian to advise if the fact allegations were incorrect. If he felt there was legal justification he should provide such information. It also invited Mr. Kandarian to stop the advertising and the attorney would then recommend the closing of the files. By letter dated November 6, 1986 addressed to the Board of Dentistry attorney, Mr. Kandarian clearly indicated his position and stated:

> In regards to your letter of October 31, 1986, I must confess to you that I didn't think it necessary to answer a complaint of the dental board, when in fact it has nothing to do with me - nor me with it. If I have committed a crime, I will answer to the board of denturitry.
>
> I am not now, nor have I ever practiced dentistry! I am licensed as a denturist and practice as such. T.M.J. evaluations certainly fall within my scope of practice, regardless of what the board of dentistry thinks, and I will continue to practice accordingly.
>
> If the board of dentistry would tend to its' own complaints instead of going on witch-hunts, it would probably accomplish a whole lot more for the protection of the people of the state of Montana. (Emphasis supplied).

At its November 12, 1986 meeting the Board of Dentistry, which consists of licensed dentists practicing in Montana, considered the complaint against Mr. Kandarian. The Board of Dentistry concluded

13

that it would request the filing of a complaint against Mr. Kandarian and if the county attorney did not so act, an injunction should be sought for the unlicensed practice of dentistry.

Such a request was made to the county attorney of Flathead County. By his letter dated December 30, 1986, the county attorney demonstrated that he understood the issues and chose not to act, stating:

> I now have had the opportunity to review these materials together with what I perceive to be applicable Montana law. It appears to me that the relevant issue is not whether Mr. Kandarian is engaging in a particular activity (TMJ evaluations), but rather whether that activity (which he does not deny) is prohibited to a denturist by Section 37-29-402(3) and, if so, what the proper remedy would be.
>
> Although I may question whether such conduct is in fact a violation of that statute, I have little doubt that, regardless, a criminal prosecution is not the proper forum in which to seek a resolution. I therefore respectfully decline to prosecute the complaint. If either the Board of Dentistry or the Board of Denturity feels that Mr. Kandarian's conduct is actionable, it seems to me that the proper remedy would be an injunctive action brought by the Board pursuant to either Section 37-4-328 or Section [37-29-411], M.C.A., respectively.

The county attorney therefore recommended that if the Board of Dentistry felt that Mr. Kandarian's conduct was actionable, the proper remedy would be an injunctive action, which was the procedure followed by the Board.

The holding of the majority indicates that because of the failure to make an investigation and a failure to follow a process which provided safeguards for Mr. Kandarian, there had been a forfeiture of immunity. I do not understand that conclusion.

The issues as between the parties are quite clear - the Board

14

of Dentistry believes that the actions taken by Mr. Kandarian constitute the unlawful practice of dentistry - and Mr. Kandarian, incidentally the Chairman of the Board of Denturity, believes that it is not the unlawful practice of dentistry, but the lawful practice of denturity. A hearing would not have more clearly established the opposing positions of the two parties. Under those circumstances, was it improper for the Board of Dentistry to seek an injunction without a due process hearing?

The specific statutes covering the Board of Dentistry indicate that their procedure was provided under § 37-4-328, MCA, which in pertinent part states as follows:

> (3) If a person, firm, or corporation engages in the practice of dentistry without possessing a valid license or violates this chapter, the attorney general, a county attorney, or <u>the board</u> may maintain an action in the name of this state to <u>enjoin the person</u>, firm or corporation from engaging in the practice of dentistry . . .

Clearly the Board is given both the responsibility to enforce the statutes with regard to the profession of dentistry and where it deems advisable, to secure an injunction. This is directly comparable to the statutory authority of the Board of Medical Examiners which was involved in the <u>Koppen</u> case. Section 37-3-326, MCA, states in part as follows:

> Notwithstanding any other provision in this chapter, the board [Board of Medical Examiners] may maintain an action to enjoin a person from engaging in the practice of medicine until a license to practice medicine is procured.

The statutory provisions are directly comparable. There is a statutory procedure for the Board of Dentistry to conduct hearings

15

after various notice and due process rights are considered. Again, these are directly comparable to the provisions for the Board of Medical Examiners. I conclude that for our purposes, the statutory provisions and purposes of the Board of Dentistry and the Board of Medical Examiners are directly comparable. That leads me to review Koppen. In Koppen we stated the following:

> The action or inaction by the Board under attack in this case is its decision not to strip Dr. Kauffman of his license when faced with complaints concerning his professional conduct. The Board's decision whether to initiate administrative proceedings against a doctor is analogous to a prosecutor's decision whether to initiate court proceedings against an alleged criminal. We concur with the reasoning in Butz that the Board's discretion might be distorted if it is not immune from suit for damages arising from such a decision. We hold, therefore, that in the exercise of its quasi-judicial authority, the Board is entitled to the absolute immunity afforded executive officials under the rule in the Butz decision. . . .

Koppen, 233 Mont. at 219-20, 759 P.2d at 176.

In Koppen this Court concluded that the inaction of the Board of Medical Examiners in any claimed failure to investigate the activities of a medical doctor were subject to the protection of quasi-judicial immunity. In the present case, the majority has concluded that the action of the Board of Dentistry in commencing an injunction proceeding, one of the options expressly given to that Board by the statutes controlling the Board, somehow causes the Board to lose its immunity. I fail to understand the rationale. I believe the holding in Koppen is directly on point. In fact we have a much stronger case for quasi-judicial immunity here because the Board in fact was attempting to exercise its obligation to protect the practice of dentistry, whereas the Board

16

in Koppen had failed to do anything with regard to protecting the public from the alleged unprofessional actions of a medical doctor.

The majority further concludes that under Lima School Dist. No. 12 v. Simonsen (1984), 210 Mont. 100, 683 P.2d 471, when the Board sought an injunction, the state does not enjoy immunity. A more complete analysis is required of the Lima case. The Lima School District had filed suit against the defendants to recover money paid under a transportation contract for the transportation of school children. The defendants counterclaimed, alleging damages and were awarded $5,000 on their counterclaim. With regard to the issue of sovereign immunity, the Court stated as follows:

> The School District argues before this Court that the counterclaim is barred by the doctrine of sovereign immunity. This issue was not raised in the pleadings or otherwise at trial. It need not be considered by the Supreme Court. The School District itself initiated this lawsuit. It would be especially inequitable to allow the state to bring an action for payment by mistake and vest them with immunity from suit in related matters. The better rule is to recognize that whenever the state brings an equitable action it waives any applicable sovereignty and opens the door to a defense or counterclaim germane to the matter in controversy. (Citations omitted.)

Lima, 210 Mont. at 112, 683 P.2d at 477.

The case concludes that the issue of sovereign immunity need not be addressed because it was not raised in the lower court. It is true the issue went on to discuss the aspect of inequitability. I would only point out that this was a proceeding brought for the recovery of monies paid on a contract theory, to which the defendants had counterclaimed. Under that fact situation, it seems entirely appropriate to hold that when the state commenced the

17

action, it could not defend by stating it was immune. I don't believe that affords any proper authority for the present decision. While this presently is an action for an injunction, it is certainly not comparable to the <u>Lima</u> action.

As a result, I disagree with the conclusion of the majority that when the Board sought an injunction, it put itself in the role of the litigant or advocate rather than adjudicator. The Board only acted in the role assigned to it by the statutes, that being the attempted prohibition of a non-dentist practicing dentistry. I fail to see how such conduct could be classed as a giving up of any quasi-judicial immunity.

I further emphasize that the conclusion in the present case contradicts our holding in <u>Koppen</u>. There we concluded that the Board's decision whether to initiate administrative proceedings is analogous to a prosecutor's decision. I find no distinction between that and the Board's decision in the present case to initiate proceedings requesting an injunction.

In addition, there is the inference that coming to court for injunctive purposes may have denied due process in some manner. I fail to understand such a theory. The purpose of coming to court is to allow the Board of Dentistry and Mr. Kandarian to set forth their opposing views in court with due process protections under court rules.

Based on <u>Koppen</u>, I conclude that the Board of Dentistry should have been granted immunity in this proceeding.

_____
Justice

18

I concur in the dissent of Justice Fred J. Weber.

_____
Chief Justice