**WARRICK COUNTY by and through its Board of Commissioners W. David Rector, Larry Barr and Jack Pike, Appellant–Plaintiff,**

v.

**WASTE MANAGEMENT OF EVANSVILLE, Waste Management of Evansville, Inc., a Delaware Corporation, and Bryce Behrman, Appellees–Defendants.**

No. 82A04–9909–CV–423.

Court of Appeals of Indiana.

Aug. 14, 2000.

Terry A. White, Olsen, Labhart, White & Hambridge, LLP, Evansville, Indiana, Attorney for Appellant.

Robert A. Dassow, Hovde Law Firm, Indianapolis, Indiana, Attorney for Appellees.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Plaintiff Warrick County Board of Commissioners appeals the trial court's grant of Summary Judgment in favor of Appellees–Defendants Waste Management of Evansville, Inc. (hereinafter individually referred to as "Waste Management") and Bryce Behrman (hereinafter individually referred to as "Behrman")(hereinafter collectively referred to as "Defendants").

We reverse and remand.

### ISSUES

Warrick County raises three issues on appeal which we consolidate and restate as:

1. Whether the trial court erred in granting Defendants' motion for summary judgment.

2. Whether the doctrine of comparative fault is applicable when a governmental entity is prosecuting a tort claim.

## FACTS AND PROCEDURAL HISTORY

When reviewing the grant or denial of a motion for summary judgment, we view the facts in a light most favorable to the party opposing the motion for summary judgment. *Kottlowski v. Bridgestone/Firestone, Inc.*, 670 N.E.2d 78, 82 (Ind.Ct.App.1996), *trans. denied.* On August 14, 1995, Behrman was employed by Waste Management, and was driving a Waste Management vehicle on Heim Road in Warrick County, Indiana. As Behrman approached Bridge 210 on Heim Road, he passed a sign that was knocked down and not visible, indicating that the bridge was closed and had a two-ton weight limit. The Waste Management vehicle weighed in excess of 43,000 pounds. Prior to crossing the bridge, Behrman stopped the truck, looked at the bridge and then attempted to cross the bridge in the truck. The bridge collapsed and the truck fell through the wooden floor of the bridge.

On May 27, 1997, Warrick County filed a complaint against Waste Management and Behrman in the Warrick Superior Court, alleging that Behrman negligently operated a heavy truck on and over Bridge 210, causing damage to the bridge and that Waste Management was liable for the acts committed by its agent. In its complaint, Warrick County requested damages to fully compensate it for the replacement of the bridge, plus all other incidental and consequential damages, pre-judgment interest, the costs of the action and post-judgment interest.

On June 9, 1997, the trial court granted the Defendants' motion for change of venue. On July 28, 1997, by agreement of the parties, the venue of the cause was changed from Warrick County to Vanderburgh County.

On September 23, 1997, the Defendants answered the complaint and requested a jury trial. On April 19, 1999, Defendants'

Motion for Summary Judgment on the Issue of Damages was filed. On April 20, 1999, Warrick County filed a Motion for Summary Judgment and Motion for Extension of Time to Provide Subsequent Designation of Facts and Brief In Support Thereof. Finally, on May 28, 1999, Warrick County filed its response to the Defendants' Motion for Summary Judgment on the Issue of Damages and also moved for summary judgment on the issue of comparative fault. On August 16, 1999, the trial court granted Defendants' Motion for Summary Judgment. This appeal ensued.

## DISCUSSION AND DECISION

### Motion for Summary Judgment.

"The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law." *Kottlowski*, 670 N.E.2d at 82. We review the order on a motion for summary judgment by applying the same standard as the trial court. *Id.* "We may consider only those portions of the pleadings, depositions, answers of interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment." *Indiana Limestone Co. v. Staggs*, 672 N.E.2d 1377, 1379–80 (Ind.Ct.App.1996). Any doubt of the existence of an issue of material fact, or an inference to be drawn from the facts is to be resolved in favor of the non-moving party. *Id.* "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct.App. 1991). Summary judgment shall be rendered if the designated evidentiary material shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Ind.Trial Rule 56(C). We note that "[s]ummary judgment is rarely appropriate in a negligence action." *Kottlowski,* 670 N.E.2d at 82 (citing *Frye v. Trustees of Rumbletown Free Methodist Church,* 657 N.E.2d 745, 747 (Ind.Ct.App.1995)). Finally, we scrutinize the trial court's grant of summary judgment to assure that the losing party is not improperly prevented from having its day in court. *Butler v. City of Indianapolis,* 668 N.E.2d 1227, 1228 (Ind.1996).

■ In its complaint, Warrick County alleged that the Defendants were negligent in the operation of their garbage truck that resulted in damage to Bridge 210, property of Warrick County. In order to obtain damages from the Defendants as a result of the negligence action, Warrick County was required to show: 1) that the Defendants owed a duty to conform their conduct to a standard of care arising from its relationship with Warrick County, 2) that the duty was breached, and 3) that an injury resulted by the breach of that duty. *See Benton v. City of Oakland City,* 721 N.E.2d 224, 232 (Ind.1999). The trial court granted summary judgment in favor of the Defendants after the Defendants argued that Warrick County had failed to establish that it suffered an injury as a result of the alleged breach of an alleged duty.

The Defendants successfully argued in their motion for summary judgment and now argue on appeal, that Warrick County did not suffer any damages as a result of their negligence. Specifically, the Defendants argue that the bridge that was destroyed by the garbage truck had no value. Further, they argue that because the bridge needed to be replaced, the County did not suffer any damages when it was required to re-route traffic and replace the bridge.

On appeal, Warrick County argues that a factual dispute exists regarding whether the County suffered an injury as a result of the alleged negligence, and therefore, the trial court erred in granting the Defendants' motion for summary judgment. We agree.

■ Our review of this cause is limited to the issue of whether a municipality is injured, when a bridge, which is approaching the end of its useful life, is damaged to the extent that it must be replaced. Generally under Indiana law, there are two measures of damages applied when measuring a tortious injury to property attached to real estate. *Terra–Products, Inc. v. Kraft General Foods, Inc.,* 653 N.E.2d 89, 91 (Ind.Ct.App.1995). In the case of a permanent injury to property, that is where the cost of the restoration exceeds the value of the property before the injury, the measure of damages is the value of the property before the injury. *Neal v. Bullock,* 538 N.E.2d 308, 309 (Ind.Ct.App.1989). In cases where the injury is temporary or repairable, the measure of damages is the cost of repair. *Id.* However, the measures of damages developed by Indiana law are ill equipped to handle situations involving bridges because there is no market for determining the fair market value of the bridge.[1]

We note that the issue of what is the proper measure of damages when a bridge is damaged is a question of first impression in Indiana. Determination of this issue is further complicated because the cost of the replacement bridge will reflect the costs of modern design with maximum load capacity and safety features that were not present in the damaged bridge.

Although we are not bound by the holdings of other state courts, we find their rulings on this issue instructive. The Pennsylvania Commonwealth Court found that the proper measure of damages is the replacement cost of the bridge when a garbage truck, exceeding the load capacity of a bridge, was driven across the bridge.

---

1. Fair market value is defined as the value a willing seller will accept from a willing buyer for a good. *Campins v. Capels,* 461 N.E.2d 712, 719 (Ind.Ct.App.1984).

*Shippen Township v. Portage Township,* 133 Pa.Cmwlth. 142, 575 A.2d 157, 158 (1990). The Pennsylvania Commonwealth Court had previously found:

> '[w]here concepts of value in a commercial sense cannot be applied because a particular structure in the public domain simply doesn't have any such value, speculative or otherwise, the measure of damages must be the reasonable cost of replacement by a similar structure consistent with current standards of design.'

*Id.* (quoting *Commonwealth v. Estate of Crea,* 92 Pa.Cmwlth. 242, 483 A.2d 996, 1002 (1977)). The Pennsylvania Commonwealth Court also found that even where the condition of the bridge itself contributed to the damage, the Defendant was liable for the damage if the Defendant's acts were a substantial factor in causing the damage. *Shippen Township,* 575 A.2d at 159.

The Alabama Supreme Court found a similar method of valuing a bridge after enactment of a statute that imposed liability on an individual for damage to a highway or structure resulting from illegal operation of a vehicle. Ala.Code § 32–5–9; *Tuscaloosa County v. Jim Thomas Forestry Consultants, Inc.,* 613 So.2d 322, 323 (Ala.1992). The Alabama Supreme Court specifically rejected a measure of damages based on the value of the property damaged, finding:

> that the *County* in its corporate capacity anticipated no tangible benefit from a bridge at this location. On the contrary, any benefit to be derived from such a structure inured to the area's residents, while the responsibility for the cost devolved upon the County. Because the County's only interest in the Whittson bridge was a vicarious interest, attempts to ascertain its value to the County could rest only upon speculation and conjecture.

*Id.* at 326 (citing *Estate of Crea,* 483 A.2d at 1001). The Alabama Supreme Court further noted that "[w]here damage calculations under such formulas are inapplicable or otherwise fail to compensate the owner of a destroyed structure adequately for his injury, the owner may recover the costs of its replacement." *Id.* (citing D. Dobbs, Handbook on the Law of Remedies § 5.1 (1973)). The Alabama Supreme Court therefore adopted the Pennsylvania Commonwealth Court's measure of damages for the destruction of a bridge: the reasonable costs of replacement by a similar structure consistent with current standards of design. *Id.*

The Iowa Supreme Court has also addressed the issue of how to value a bridge, arriving at a wholly different result than the Pennsylvania and Alabama Courts. In *Vlotho v. Hardin County,* 509 N.W.2d 350 (Iowa 1993), the Iowa Supreme Court affirmed the trial court's award of damages for the actual or real value of the bridge when a county engineer demolished a bridge without proper authorization. The court found that market value is the usual standard for determination of damages because "one can make a loss good by going into the open market and buying an equivalent substitute." *Id.* at 357. The court noted that under Iowa law, when the fair market value of a good cannot be determined, the courts are to resort to the actual or real value approach which considers the original cost, the age of the property, its use and utility, its condition, and the costs of restoration or replacement. *Id.* Thus, the Iowa Supreme Court concluded that the proper measure of damages for the destruction of a public structure is the actual or real value. *Id.*

In *Town of Fifield v. State Farm Mutual Automobile Insurance Co.,* the Wisconsin Supreme Court arrived at a conclusion similar to that of the Iowa Supreme Court. 119 Wis.2d 220, 349 N.W.2d 684 (1984). The Wisconsin Supreme Court found that sufficient evidence supported the jury's award of damages caused to a bridge, when the jury considered the testimony of various witnesses with regard to the bridge's value, its utility to the town, its

state of repair, and its usefulness from both an economic and social viewpoint. *Id.* at 691.

We agree with the Pennsylvania and Alabama courts, that a bridge, which is serving the public, has value without regard to the condition of the bridge, and that the municipality charged with maintaining or replacing the bridge suffers an injury when the bridge is damaged. *See Estate of Crea,* 483 A.2d at 1002; *Jim Thomas Forestry Consultants, Inc.,* 613 So.2d at 326. However, we are persuaded by the Iowa and Wisconsin Courts' method of measuring damages when a bridge is destroyed by considering factors in addition to the replacement cost of the bridge.

Without comment on the specific facts before us, a bridge, which in some capacity is serving the public, has a value. The governmental entity charged with maintaining and or replacing the bridge suffers a loss when the bridge is damaged or the life of the bridge is shortened as a result of the negligent acts of another. *Estate of Crea,* 483 A.2d at 1002. We are also aware that the award of damages should not create a windfall for the injured party. *Chaiken v. Eldon Emmor & Co., Inc.,* 597 N.E.2d 337, 347 (Ind.Ct.App. 1992). Thus, when a bridge must be replaced as a result of the negligent acts of another, the governmental entity is injured to the extent of the value of the bridge, when considering such factors as the original cost, the age of the property, its use and utility from both an economic and social viewpoint, its condition, and the costs of restoration or replacement. *Vlotho,* 509 N.W.2d at 357; *Town of Fifield,* 349 N.W.2d at 691.

Substantial evidence of damages in the form of testimony regarding the condition of the bridge, its utility to the residence of Warrick County, its age and the cost of the bridge's replacement was submitted for the trial court's consideration in ruling on the motion for summary judgment. In the present case, the bridge was a steel structure with a wooden roadbed. At the time the Defendants damaged Bridge 210, the bridge was closed to traffic over two tons, but open to local traffic not exceeding the posted weight limit. In response to Defendants' interrogatories, Warrick County asserted that it suffered the following damages:

a. Replacement of bridge 210;

b. County labor costs associated with collapsing of bridge deck, signage and monitoring after accident;

c. Wetland/upland monitoring costs;

d. Engineering costs;

e. Preparation costs;

f. Design fee;

g. Additional mileage incurred by Warrick County residents as a result of bridge being out.

(R. 569). The Affidavit of Richard Bennitt, a professional engineer of the firm of Bernardin Lochmueller & Associates, Inc., was also submitted stating that the total cost of replacing Bridge 210 was $1,626,-912.00.

The determination of damages is a function of the finder of fact when it requires an assessment of the credibility of witnesses and the weighing of evidence. *Amos v. Keplinger,* 397 N.E.2d 1010, 1011 (Ind.App.1979). The question of the bridge's value is a question of fact for determination by the trial court.

### Comparative Fault

On appeal, Warrick County argues that the Indiana Comparative Fault Act is not applicable to the present cause of action due to the governmental entities and public employee exception. We disagree.

The Comparative Fault Act provides that: "In an action based on fault, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault ..." Ind.Code § 34–51–2–5. The legislature has however provided a governmental entity and public employee

exception stating that, "[t]his chapter does not apply in any manner to tort claims against governmental entities or public employees ..." under Indiana's Tort Claims Act. Ind.Code § 34–51–2–2.

We are cognizant that there are inequalities occasioned by the application of the governmental entity exception contained in Indiana's Comparative Fault Act. *Governmental Interinsurance Exchange v. Khayyata*, 526 N.E.2d 745, 747 (Ind.Ct. App.1988). However, when interpreting the meaning of a legislative enactment that is clear and unambiguous, our duty is to give effect to the plain and manifest meaning of the language used, and to apply the provisions as the legislature intended. *Id.* The legislature excepted the applicability of the Act only for those cases against governmental entities under the Indiana Tort Claims Act. Ind.Code § 34–51–2–2; *See Governmental Interinsurance Exchange v. Khayyata*, 526 N.E.2d at 747. The exception to Indiana's Comparative Fault Act has no application to the situation at hand where the governmental entity has sued a private entity.

Our interpretation of Indiana's Comparative Fault Act is consistent with outside jurisdictions decisions addressing this same issue. A majority of states that have addressed this issue allow the defensive use of contributory fault where the state initiates suit. *See Missouri Highway and Transportation Commission v. Kansas City Cold Storage, Inc.*, 948 S.W.2d 679, 683 (Mo.Ct.App.1997), *reh'g denied, trans. denied.*

It has long been held that when a governmental entity comes into court and institutes a suit for damages, not based on an infringement of its sovereignty, or its prerogatives, it submits the claim in the nature of a private litigant and its adversary is entitled to any defense available to him were his opponent another private litigant. *United States v. Moscow–Idaho Seed Co.*, 92 F.2d 170, 173 (9th Cir.1937); *See also State v. Young*, 151 N.E.2d 697, 700, 238 Ind. 452 (Ind.1958) (noting that where the State brings an action it consents to the ordinary rules of pleading and practice of the forum and is subject to a cross action arising out of the same transaction); *United States v. Mottolo*, 605 F.Supp. 898, 910 (D.N.H.1985) (holding that the government acting as plaintiff constitutes a waiver of the Eleventh Amendment and sovereign immunity to any claims raised defensively). In *Dept. of Public Safety v. Parker*, the Florida Court of Appeals identified two theories supporting the contention that the government is subject to the defense of comparative fault:

> Some courts allow the said defense [contributory fault] on the theory that the government, when it files an action like a private litigant, impliedly waives any immunity as sovereign and its adversary is entitled to set up any defense available to him if his opponent were another private citizen.... The second theory ... [is w]here the state employs the machinery of justice to enforce a claim and yet it seeks to deny the defendant a defense which would be available to him as against any other plaintiff. There is an appearance of unfairness in the state's position –the spectacle of a participant in a contest rejecting the ordinary rules of the game by which others must play ... the fact that the state initiates the proceeding puts the matter in a setting which runs counter to generally accepted notions of fair play. The state as the creator of laws should not present such an image of injustice.

161 So.2d 886, 888–889 (Fla.Dist.Ct.App. 1964). In addressing the same issue, the Montana Supreme Court found that "[t]he better rule is to recognize that whenever the state brings an equitable action it waives any applicable sovereignty and opens the door to a defense or counterclaim germane to the matter in controversy." *Lima School Dist. No. 12 v. Simonsen*, 210 Mont. 100, 683 P.2d 471, 477 (1984) (citing *People v. Barenfeld*, 203 Cal. App.2d 166, 21 Cal.Rptr. 501 (1962)).

In the present case, Warrick County, a governmental entity, brought an action against Waste Management. Under the circumstances in the present case, where the government has initiated suit against a private party, this court agrees with the holding in the *Missouri Hwy & Trans. Comm.* case:

> defendant's use of comparative fault as a defense against the state is permitted so long as the allegations supporting a comparative fault submission arise out

> of the same transaction upon which the state initially filed suit and the defense does not result in an affirmative judgment against the state.

*Id.* at 684. Therefore, Waste Management shall be allowed to use comparative fault.

### CONCLUSION

We reverse the trial court's grant of the Defendants' summary judgment motion and remand the matter for the finder of fact to determine the value of the bridge considering the bridge's original cost, the age of the property, its use and utility from both an economic and social viewpoint, its condition, and the costs of restoration or replacement. We also instruct the trial court that any award of damages resulting from this cause shall be adjusted to give full effect of the Comparative Fault Act.

Reversed and remanded.

KIRSCH, J., and BAKER, J., concur.